United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Craig A. Kilmer,　　　　　　　　　　　　　　　　　　　Case No. 03-73320-R
　　　　　　　Debtor.　　　　　　　　　　　　　　　　Chapter 7
_____/

Ruth Olexsy,
　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 04-4365

Craig A. Kilmer,
　　　　　　　Defendant.
_____/

Opinion Regarding Defendant's Motion for Summary Judgment

　　　　In this chapter 7 case, the debtor's ex-wife, Ruth Olexsy, filed this adversary proceeding to determine dischargeability of debt under § 523(a)(5) and objecting to the discharge under § 727(a)(4)(A). Olexsy seeks a determination that the debt owed to her pursuant to the parties' July 17, 2001, consent judgment of divorce is a nondischargeable alimony, maintenance or support obligation. Olexsy also alleges that the debtor, Craig Kilmer, knowingly and fraudulently in connection with his chapter 7 made a false oath or account.

　　　　On September 22, 2006, Kilmer filed a motion for summary judgment. The Court conducted a hearing on October 30, 2006, and took the matter under advisement.

I.

　　　　The parties' divorce judgment provided under the heading "Alimony/Spousal Support," that for a period of 6 years Kilmer was to pay spousal support to Olexsy in the amount of $100 per week,

with a provision for increases based on Kilmer's income. This support was to end upon Olexsy's death, remarriage, or co-habitation.

The judgment also contains a section entitled "Section 71(b) Payments" which provides that Kilmer is to pay Olexsy $2,000 per week for 10 years, for a total of $1,040,000. The judgment provides that these payments are not deductible on Kilmer's tax return or to be included as income on Olexsy's tax return. Further, the payments are to be non-modifiable during the 10 year term. Olexsy was granted a lien on Kilmer's property for the outstanding balance.

The parties' two children were provided for in a section entitled "Child Support." The Judgment provides that Kilmer was to pay $100 per week for the support of the two minor children. The judgment acknowledged that this amount deviated from the child support formula based on the fact that Kilmer was paying 100% of his guaranteed income to Olexsy in the form of the Section 71(b) payments.

The parties' property was divided as follows: Each party was awarded his or her respective interests in any annuity/retirement accounts. Olexsy was awarded the marital home. Olexsy was to assume the first mortgage and Kilmer was to pay off the second mortgage in the amount of $100,000. Kilmer was awarded all interest in the following businesses: Polo Fields Golf and Country Club, Quail Crossing Community, Mallard Point, The Medalist Golf Practice Facility, and Forest Cove Development. Kilmer was also awarded the Fidelity Bank CD in the amount of $130,000. The judgment also contained a provision for an award to Olexsy in the event Kilmer received in excess of $2.5 million from the sale of the businesses. Each party was to retain any personal property in their possession.

The judgment contains a section entitled "Non-Dischargeability," which provides that the

distribution of property and debt shall be considered support to each party and thus non-dischargeable in bankruptcy.

Kilmer made the required $2,000 weekly payments under Section 71(b) until August 17, 2003. The balance remaining on the $1,040,000 judgment is $882,000.

Olexsy's adversary complaint contends that the amounts owing from the divorce judgment are nondischargeable under § 523(a)(5). Olexsy also alleges that the debtor failed to disclose in his schedules unpaid child support, the $1,040,000 judgment and a $20,000 deposit held in escrow by Commerce Twp. Olexsy contends that these failures to disclose warrant a denial of the discharge under § 727(a)(4)(A).

II.

As applicable in this case, 11 U.S.C. § 523(a) provides in pertinent part:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
> . . .
>
>> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . but not to the extent that -
>>
>> . . .
>>
>> (B)  such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support .

11 U.S.C. § 523(a)(5)(B).

3

"'[T]he terms "alimony" and "support" are given a broad construction to promote the Congressional policy that favors enforcement of obligations for spousal and child support.' 'Congressional policy concerning § 523(a)(5) has always been to ensure that genuine support obligations would not be dischargeable.'" *Bailey v. Bailey* (*In re Bailey*), 254 B.R. 901, 905 (B.A.P. 6th Cir. 2000) (quoting *Hayes v. Hayes* (*In re Hayes*), 235 B.R. 885, 891 (Bankr. W.D. Tenn 1999) (internal citations omitted)).

In *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir. 1983), the Sixth Circuit established a four-step analysis for determining when an obligation, which is not specifically designated as alimony or maintenance, is nonetheless in the nature of support and thus nondischargeable. First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law. *Calhoun*, 715 F.2d at 1109-10; *Singer v. Singer* (*In re Singer*), 787 F.2d 1033, 1036 (6th Cir. 1986).

In *Sorah v. Sorah* (*In re Sorah*), 163 F.3d 397 (6th Cir. 1998), the Sixth Circuit reiterated that when a state court specifically labels an obligation as support, and the obligation has all the indicia of support, the obligation should be conclusively presumed to be a support obligation by the bankruptcy court.

However, if the state court has not specifically labeled an obligation as support, the bankruptcy court "must look behind the award that is made under state law and make an independent

factual inquiry to determine whether the award is actually in the nature of support." *Harvey v. McClelland (In re McClelland)*, 247 B.R. 423, 426 (Bankr. N.D. Ohio 2000). *See also Luman v. Luman (In re Luman)*, 238 B.R. 697, 705 n.2 (Bankr. N.D. Ohio 1999) (When the obligation is not labeled support, *Calhoun* still applies.).

In this case, the award at issue is not labeled as alimony, maintenance or support. It is set forth under the heading "Section 71(b) Payments." Section 71(b) of the Internal Revenue Code provides in part:

> Alimony or separate maintenance payments defined. For purposes of this section
>
> (1) In general. The term "alimony or separate maintenance payment" means any payment in cash if-
>
> > (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
> > (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
> > (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
> > (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

26 U.S.C.A. § 71(b)(1) (West 1988).

The terms of the divorce judgment do not satisfy the requirements for alimony under § 71(b) because the judgment states that the payments are not deductible by Kilmer or reportable as income

5

by Olexsy. Further, the payments at issue do not cease upon the death of Olexsy.

There is a separate section in the judgment entitled "Alimony/Spousal Support" which provides for weekly payments to Olexsy in an amount ranging from $100 up to $575, depending on Kilmer's income.

Because the award at issue is not labeled support, the Court must look behind the award to determine if it is in the nature of support. Factors operating against finding the award to be in the nature of support include: the award is non-modifiable; the payments are not deductible on Kilmer's tax return and are not be included as income on Olexsy's tax return; Olexsy received a lien on Kilmer's assets to secure payment of the obligation; the payments do not cease upon Olexsy's death or remarriage; and there is a separate section for alimony/support.

Factors operating in favor of finding the obligation to be in the nature of support include: the child support payments deviate from the traditional support formula based on the fact that Kilmer was obligated to make the Section 71(b) payments; and in the section entitled Alimony/Spousal Support, paragraph f requires income from the 71(b) payments to be included as income to Plaintiff for purposes of calculating spousal support.

The deposition testimony of each party appears to favor the other party. Olexsy stated that the $1,040,000 was basically a division of the parties' net worth. (See September 5, 2006, dep. of Ruth Olexsy at 30, 33.) Kilmer acknowledged that the $2,000 weekly payments were for property payments or spousal support. (See September 7, 2006, dep. of Craig Kilmer at 13.)

Based on all of the evidence provided, the Court concludes that there are genuine issues of material fact concerning the extent to which the debt is for support. Accordingly, Kilmer's motion for summary judgment on this count is denied.

6

04-04365-swr    Doc 53    Filed 01/17/07    Entered 01/17/07 15:22:02    Page 6 of 7

III.

With respect to § 727(a)(4), Olexsy contends that Kilmer intentionally concealed his child support debt and § 71(b) obligations. Kilmer responds that he did not list the child support obligation because he knew it was non-dischargeable. Further, he did list the § 71(b) obligation on schedule F.

Olexsy also asserts that Kilmer failed to list as an asset a $20,000 debt owed to him by Commerce Twp. Kilmer responds that he did not list it because it was not owed to him at the time he filed his petition.

The Court concludes that genuine issues of material fact exist as to whether Kilmer's conduct was knowing and fraudulent. Accordingly, Kilmer's motion for summary judgment on this count is denied.

NOT FOR PUBLICATION

**Signed on January 17, 2007**

                                      **/s/ Steven Rhodes**
                                      **Steven Rhodes**
                                      **Chief Bankruptcy Judge**